Good morning, may it please the court. My name is David Porter. I'm an assistant federal defender from the Eastern District of California, and I represent the appellant Tony Saffold. Counsel, there's been a lot of constitutional law that's developed around the California time system since Saffold's case began decades ago. Under the laws that stands now, I don't understand why the delay between his final conviction and his California post-conviction relief proceeding didn't cause a state default so that federal tolling just doesn't matter. He was too late in California, and that's the end of it. Help me with that. Okay. I think there are four reasons why this Court should not rule on the statute of limitations issue. The first is that, as you well know, in California, when a — when the Supreme Court denies a petition for untimeliness under its rules, it does so generally with a citation, a citation to Inouye Clark, Inouye Harris, Inouye Robbins. That was not the case in this — in this case. Actually, when I looked at it, I thought they didn't expand it with a citation because it seemed sort of obvious to them and not worth the time and effort. That leads to another point, Your Honor. The California Supreme Court took six — more than six months to decide this Mr. Saffold's Supreme Court petition. And if it was a matter — it was so clear, as you're suggesting, Judge Kleinfeld, that it was just simply a timeliness denial, that I don't — I seriously doubt that would have been the case. Well, but he — I mean, there's a whole other problem, and I guess you're going to get to it, which is that we have an opinion which says two things. One of them is that Judge Kleinfeld's point is correct, and the other one, which apparently is what you were arguing or somebody was arguing on behalf of your client at the time, but on the other hand, it also says that the district court should get to the merits, that they were remanding for the merits. And the reason for that is that at that point, the late filing back at the beginning wouldn't have mattered. So it seems that what really happened is that — I don't know. This is sort of somewhere between a law-of-the-case problem and a mandamus problem because the directive was to the district court go back and decide the merits. So what do we do with this? Well, that's exactly what the district court did, and the district court didn't ignore the issues that Judge Kleinfeld is raising right now. But the judge said, and this is at volume one of the excerpts of record at page 11, citing the complex issues of law involved with the statute of limitations, the district court said that a substantial argument can be made in favor of equitable tolling. I'm going to go to the merits of this. And you're basically saying this is a mess. We should get to the merits. Exactly. I think it was over two decades ago that the trial in this case took place. At least one member of the panel agrees with that. So if I may address the ineffective assistance of counsel for trial, counsel having failed to successfully adjudicate the motion to exclude evidence, I think that the State very reasonably in its answer conceded for purposes of argument that counsel was ineffective. Mr. Sinkhan did many things that were ineffective in trying to litigate that. The real issue there is prejudice. And I just wanted to point out to the Court that one of the reasons you should find prejudice is that the jury deliberated for five days. This is a very, very complicated case. The Mr. Saffold, under his own testimony, was there at the time of the case. It was a little complicated on the merits because Saffold said the other guy did it and the other guy said Saffold did it, and the two guys are the ones who are there. But it seems to me that the question here is narrower. It's things like should Saffold's attorney have been more aggressive with the widow. And that strikes me as just right at the heart of the sort of tactical judgment that the Supreme Court told us leave to the attorneys. Well, that was one of our claims in effective assistance of counsel for failing to having failed to impeaching Mrs. Michaels. He did impeach her. It's just that your argument is he should have been more aggressive about it. Well, not just more aggressive, Your Honor, but there was a wealth of contradictory statements that Mrs. Michaels gave both to the investigators and during her preliminary history of preliminary hearing testimony, and it would – it was incumbent upon him to present that in trying to impeach her. What was the contradictory information during the investigation? I thought the only contradiction was at the preliminary hearing, that it was just she was kind of confused about who showed her what when, but that was about it, not about who the person was. No, there were other statements. She told one investigator that it was a Hispanic man who came in in the morning and another one that it was a black man who came in in the morning. There were other – Some of us aren't that great at ethnic identification. I mean, that's something where the lawyer asks the question, trying to blow apart her identification, and the answer is likely to not be helpful, so a lawyer leaves off it. I could not agree more, Your Honor, that this is an area rife with misidentification in terms of cross-racial identification. Lawyers make these tactical judgments all the time, like how hard do I want to attack this widow? If I make her cry on the stand, what will that do for my client? It's just what you do in cross. Well, again, that only goes to one of the claims for ineffective assistance of counsel, and that was the impeachment of Mrs. Michaels. Before we get back to the other one, I want to ask you one more thing. Yes. There was a question about our earlier decision when we said go back and decide the merits. I think that was in 2002, and then our Bonner decision came down in 2005 and said, well, the Supreme Court's changed all that. That's not right anymore. Now, let's see what our words were. Where the California court denied the petition is untimely under the Supreme Court decision in Pace, that means that Bonner's petition was never properly filed for purposes of tolling. Yes. That takes us back to the first question, and I just needed a little expansion on that issue of whether this is the exception of the law of the case where a subsequent Supreme Court decision has made our decision incorrect. I'm very glad you raised that, because Bonner is distinguishable from this case. In Bonner, there was a four-year delay between the second and third habeas corpus petitions that he filed in the State court. There was absolutely no ambiguity in the ruling that this was an untimely petition. And here they are. In fact, what happened here was the trial court did decide the question on the merits. That a three-page decision. And in fact, the – I mean, this is why I think it's very, very confusing. And in fact, my understanding is that the Petitioner did raise and try to answer what could be called a diligence question in his petition, which is why he didn't raise it in his original appeal. And it is at least more likely that that's what they meant by lack of diligence, because that sounds like diligence. It doesn't sound like timeliness. But on the other hand, you argued to the Court the last time that it was about the beginning, so – which you had reason to do because you didn't think it mattered. So it's all a mess, is the bottom line. I think – I think that's right. I think that, you know, the term insolubly unresolvable is what you – what you term this. And the fact is – It's also the question of whether this is law of the case or law of mandate, because this was a specific directive to go do something. Yes. It wasn't just a question. It's not the legal ruling that's the question. It said go decide the merits, and he did. That's correct. And even if – even if, erasing all of that, you said, okay, well, there's no statutory tolling, and therefore the statute of limitations bar, this case would still have to be remanded to the district court. Because in Bonner, that Judge Kleinfeld is talking about, in Bonner itself, the Court remanded for consideration of equitable tolling because Mr. Bonner didn't have a chance to argue with the lower court. You're right. You would have to do that for a case that's 22 years old. I have – I don't actually understand the equitable tolling argument, so I'll need some help on that. And also, I'm still having trouble with the merits argument because of the double deference that the Supreme Court requires to apply. We don't just decide whether the lawyer rendered ineffective assistance under the extremely liberal standard of Strickland, which basically tells us hands-off tactical judgments. We also defer to the California court in its decision that what the lawyer did wasn't below the very low Strickland standard. Yes. And that – what's interesting about that is that the Superior Court denied on the merits only one, only the first claim of failure to impeach or successfully impeach. It did not rule on the merits, specifically on the second IEC claim. And therefore, under the – Do you mean the one about the motion? Yes. I thought on the motion – I'm sorry. On the motion, it did. You're right. The motion, it did. The motion, it did rule on the merits. It said he had a perfectly good reason for waiting until he saw what the State had. Absolutely. And I think if you read Volume 3, Excerpts of Record 402 to 421, this is the transcript of the preliminary – of the hearing on the motion to exclude evidence. You will find absolutely that Mr. Sinkhon was totally unprepared to argue that motion. He argued frivolous items. He brought the prosecutor up on the stand and examined him. He made numerous frivolous arguments. And finally – But ultimately, is it not true that the strongest argument for exclusion, which was that there was a single photo showed of Saffold, wasn't so? No. That is not true. I think that if you read – and it's at – Kirk's transcript, 6566. It's also at the answering brief at pages 17 and 18. If you read the preliminary hearing transcript at that point, it is a fair reading to say that that picture was of Mr. Saffold. She had just said that she had picked a photo of Mr. Saffold as the shooter, and then they asked her about the single photograph, and then they asked her, is that the man or isn't that the man? And she said it was. And so I think a very fair reading of that – And later she said it wasn't. She said – the very next question when the prosecutor tried to – But was it the person? I mean, we don't know who they actually showed. I thought they showed the other guy reason. I don't think that you can determine that from the record, Your Honor. Another insolubly. It seemed to me that that's what was clearly going on. She was just a little mixed up. But certainly that's what the police said, and she in the end didn't disagree. She said she didn't remember. In the very next question, she said she didn't remember. I just looked at that, and it looks to me like she's just mixed up by the question she's being asked and she's having trouble figuring out exactly what it is they want to know and which visit was which photograph. It didn't look like it was probative of anything or was going in too much. The only response I can give to that is she was very confused. I agree. I'd be confused if I were asked these questions. I can't tell. It's like, do you remember me showing you this photograph? And then do you remember me showing that photograph? And which do you remember when? And no. She was very confused. I agree that the trial judge to look at what the trial judge said several pages later. He says it was clear to me that she was identifying the perpetrator. And I think that that's very significant. If she was confused, that's my opinion. Okay. Thank you very much. Thank you for your argument. Good morning, Your Honors. May it please the Court. David Andrew Eldridge, Deputy Attorney General for Respondent. I agree with so much of what the Court said that I don't want to add too much. Well, should we decide this timing, this question, or can we do what the district court did and just not decide it? If you win. Is there any reason we should decide it? Certainly, if this Court agrees that there's a – that relief should be denied, I would be in no position to argue that you must basically – It's not logically prior in any way that we have to decide. I mean, no, I meant that as a serious legal question. There's no reason we have to decide. You'll take it on timeliness or the merits? Absolutely. And we can assume without deciding on timeliness? Absolutely. But we would not waive a defense merely because it's messy to decide. Can we assume without deciding timeliness? Of course. Yes, Your Honor. So I – we would be perfectly happy with a ruling that on the merits it's denied. However, I do want to point out as you've gone into Kleinfeld – Judge Kleinfeld that EDPA is the question here and EDPA simply isn't addressed in the opening brief at all, nor is it in the reply brief. All that's been addressed is a de novo assertion that there was ineffective assistance for two grounds. We point that out in the answering brief. There's been no request – no one's argued that that was a mistake and sought to reopen the initial briefing to address it. All we have before you is a claim that the district court was incorrect to deny relief because as a matter of law it was incorrect. There is no argument in the opening brief that it was unreasonable for the state court to deny relief. So on the reasonableness question, this court could also as an alternative basis for ruling find that that has been forfeited. As to one fact also regarding Mr. Singan, Singan trial counsel, his preparation was – has been represented as though he didn't even bother to bring in the lineup that he supposedly was going to base his motion on. What he made clear, though, is that he had at his office a copy of the lineup and part of the reason he was not ready to go forward on that date was he'd never seen the original. He says at excerpt page 413, I've never seen the original. And what the prosecutor had before him at that moment was just a copy. And his position was he needs the actual original physical thing, not just a photocopy of it, even if there could be different shading and so on. I am – So how does that show that he was better prepared? I mean, because then he went ahead without it. Well, he didn't want to go ahead without it, Your Honor. He wanted to actually have it put over until he could see the original. Then when he is – the Court said no. The Court said it seems that you have a reasonable substitute for it. He didn't agree that he had a reasonable substitute for it. But the Court was going to proceed on the motion now, despite the fact that he'd never seen it. It was never turned over by the prosecution up until that point. Can I ask a question because I was very confused? It's just a fax. Was the assertion that there were back, I guess in October or whenever it was, the original investigation, did they go see the witness twice or once? And then there was another session just before the preliminary hearing, and I couldn't tell whether that was the session where they supposedly showed her an individual picture. I mean, it just mattered because it was not clear what periods they were talking about at various times. There was an initial – there was an initial visit with Ms. Michelle in which they showed her one line-up, which did have the Petitioner's picture. Line-up A. Okay. They went back again, and they again showed her – in that visit, they showed her two lines. The original one again, in which she – there was no problem. And then the second one, they showed her one without his picture in it. And he said – she said, this person, not Reese and not him, sort of looked like him but wasn't him. Resembled, yes. That – and she was clear at the preliminary hearing. And then when did they show her an individual photo? Then? They never did. She is – she was perfectly clear at the hearing. Now, I thought they did, but it wasn't him. My impression is that it was Reese they were showing him. No. I – at some other point, they showed him – at some point, they may have showed her a picture of someone not the defendant. Right. Reese. The other – the other person who could have been the defendant, but wasn't. My recollection fails me as to whether that was Reese at that point. But it is clear that it was not the defendant, Your Honor. Right. And the – and one of the – the big – the big factual premise of the claim is that it was defendant. And it simply wasn't. In fact, that was – in the trial record, counsel for a petitioner pointed out – She said something during the preliminary hearing that could have sounded like that, and then she said, no, that isn't what I meant. And she was just confused about who had shown her what. And trial counsel did his due diligence. He inquired about it, and the prosecutor said, no, she was never shown an individual picture of the defendant. And counsel accepted that. So when the claim is that we simply don't know, we do know. The person who was presumptively competent and who had every duty of loyalty to the defendant investigated and concluded they never showed a picture of – a single picture of the defendant. So you may indeed accept that as true, that he was never shown a picture of the defendant. He still could have cross-examined her and shown she was mixed up, but the question is would that have made any difference. And I – well, I'm willing to agree with you on that, Your Honor. I have no further affirmative points I wish to make, but I'm happy to answer any additional questions. Thank you very much. Thank you, Your Honor. Okay. The case of Saffold v. Newland is submitted.
judges: Schroeder, Kleinfeld, Berzon